UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| APRIL N McKNIGHT as Personal Representative of the Estate of Eugene C. McKnight, deceased, APRIL N McKNIGHT on behalf of Z.K.M., minor son of Eugene C. McKnight, | ) ) ) ) ) | 3:13-cv-00147-SEB-MPB |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| JACOB  TAYLOR, | ) ) | |
| Defendant. | ) ) ) ) | |

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant Jacob Taylor's ("Officer Taylor") Motion for Summary Judgment on Counts I and III of Plaintiffs' Complaint [Dkt. No. 76], filed on February 15, 2016, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, we **GRANT** Defendant's motion.

**Factual and Procedural Background**

This case arises out of the tragic circumstances surrounding the death of Eugene McKnight.  On July 10, 2011, McKnight was shot and killed by Officer Jacob Taylor, a SWAT officer with the Evansville Police Department ("EPD"), after an approximately

fifty-minute standoff at 403 Read Street in Evansville, IN. Thereafter, on July 9, 2013, April McKnight, as personal representative of the Estate of Eugene McKnight and on behalf of Eugene's minor son (identified as ZKM),[1] filed suit alleging that Officer Taylor used excessive force in violation of the Fourth Amendment to the United States Constitution. Compl. at ¶ 27. [2]

## A.  Procedural History

On March 18, 2015, we granted summary judgment in Defendants' favor on all counts except Counts I and III—Plaintiff's excessive force claims against Officer Taylor. See Dkt. 51. In denying Defendants' motion for summary judgment on these Counts, we held that "the none of the circumstances of the standoff—*other than McKnight's putative possession of a gun*—would furnish grounds for a reasonable use of deadly force." *Id.* at 11 (emphasis added). With regard to McKnight's putative possession of a gun, we held that the reasonableness of Officer Taylor's belief that McKnight was wielding a gun at the time of their confrontation had been placed at issue by Plaintiff and that we lacked sufficient evidence to resolve that question as matter of law. *Id.* at 10. Our order provided a non-exclusive list of unknown facts relevant to that determination, including: the size and shape of the object McKnight was holding when he was shot; the lighting conditions

---

[1] Although Plaintiff filed suit as personal representative of the Estate and on behalf of ZKM, thereby appearing as two distinct Plaintiffs on the Court's docket, for simplicity, we refer to her in the singular throughout this Order.

[2] Plaintiff's Complaint originally contained eighteen counts against the City of Evansville, Evansville Chief of Police Brad Hill, and Officer Taylor in his individual and official capacity. Dkt. 1. Only Plaintiff's individual capacity excessive force claims against Officer Taylor remain. See Dkts. 11, 51.

at the time McKnight was shot; Officer Taylor's exact distance from McKnight and his line of sight at the time of the shooting; and the manner in which McKnight was holding the object in his hand. *Id.*

Following entry of our order denying summary judgment on Plaintiff's excessive force claims against Officer Taylor, discovery was reopened at the request of Plaintiff's newly-acquired counsel and the parties were granted an opportunity to file supplemental dispositive motions. Dkt. 73.Thereafter, on February 15, 2016, Officer Taylor again moved for summary judgment on Plaintiff's excessive force claims, this time focusing on the facts highlighted by our prior order and unearthed in discovery. See Dkt. 76.

In our prior order, we detailed the entire factual scenario underlying this litigation with particular attention to the reasonableness of Officer Taylor's belief that at the time of their encounter Eugene McKnight was holding a gun and presenting an imminent danger to him and others. Here, we provide an annotated version of those facts which are relevant to a determination of the reasonableness of Officer Taylor's belief.

**B.  Officer Taylor's Involvement**

At approximately 2:13 p.m. on July 10, 2011, Officer Taylor received a text message from the EPD SWAT Team Commander notifying him of an on-going situation involving a barricaded gunman at 403 Read Street and asking whether Taylor was available to respond. Officer Taylor responded that he was available, after which he reported to the EPD command building, where he prepared the SWAT Unit truck and drove to the scene of the standoff. Enroute, Officer Taylor was informed by police radio

3

transmissions that the barricaded suspect was firing shots at the police on scene. When

Officer Taylor arrived at the scene, he stopped the truck just south of the residence,

where he could hear officers shouting commands to the suspect to come out with his

hands up. Sergeant Hoover, another officer on scene, informed Officer Taylor that the

suspect had fired shots from the second story window and instructed Taylor to equip

himself with a ballistics shield and prepare his 40 mm launcher, a non-lethal weapon that

fires sponge rounds. While gathering his equipment, Officer Taylor heard what he

believed was a gunshot coming from the second story of the residence. He delivered the

ballistics shield to Officer Knight and was informed that the suspect, Eugene McKnight,

was suffering from suicidal behavior and had been inhaling paint-thinners and consuming

alcohol. He was also informed that McKnight had shot himself and had nearly struck an

officer in the head with one of his prior gunshots.

Equipped with his 40 mm launcher and his standard-issue Heckler & Koch .45

caliber rifle, Officer Taylor located himself to the rear of Officers Knight and

Montgomery. Officer Knight held the ballistic shield; Officer Montgomery took cover

behind Officer Knight and to the right; and Officer Taylor stood behind Officer Knight

and to the left. Together, the three officers huddled against the corner of an apartment

building adjacent to the home, with Officer Montgomery closest to the building and

Officer Taylor farthest away.

A few seconds after Officer Taylor positioned himself behind Officer Knight,

Eugene McKnight emerged from the house onto the front porch. Although Officer Taylor

4

could not personally see the door of the home—he was crouched down unzipping the bag containing his 40 mm launcher—he heard other officers begin shouting to McKnight to "show his hands" and "drop the gun." Officer Taylor heard the other officers command McKnight to "drop the gun" at least four times before he stood up and peered around Officer Knight to view the scene.

From that position, Officer Taylor was standing in direct sunlight and positioned less than thirty feet from the front porch on which McKnight was standing, motionless in the shade of the home's awning.[3] McKnight, who was covered in blood from his self-inflicted wounds, assumed "a kind of crouched position with his right hand holding the door open and his left hand by his thigh." Def.'s Br. at ¶¶ 110, 150. The officers continued to shout commands to him ordering him to drop the gun and show his hands, but McKnight remained motionless and stared out at them blankly. In McKnight's left hand, the officers saw a "silver and black" object that appeared to be approximately five or six inches long. Officer Knight, Officer Taylor, Officer Montgomery, and Sergeant Hoover all reported thinking that the silver and black object was a medium-sized handgun.

To Officer Taylor, the silver and black object looked like a handgun with a silver slide and black rail, much like other handguns he had seen in the past, and the stance in

---

[3] Defendants assert that Officer Taylor was "fully exposed" in his new position and had a "clear, unobstructed view" of McKnight. Defs.' Br. at ¶¶ 108, 115. Plaintiff, on the other hand, maintains that Officer Taylor was standing behind Officer Knight, who was wielding a ballistic shield. Pl.'s Resp. at 7. She points to how the barrel of Officer Taylor's gun reportedly hit Officer Knight in the face, suggesting it was projected over Officer Knight's shoulder from behind. *Id.*

which McKnight had positioned himself—a crouched stance with a low center of gravity with his left foot forward and his right foot still in the doorway—looked to Officer Taylor like a shooting position. Seeing McKnight positioned in an "aggressive bladed stance" and holding what appeared to be a silver and black handgun, Officer Taylor shouldered his Heckler & Koch .45 caliber rifle and ordered McKnight to drop the gun. McKnight gave no response to the command, remaining motionless on the front porch. Seeing no response, Officer Taylor fired a single shot that struck McKnight in the chest. Approximately 5–6 seconds elapsed from the time McKnight was first commanded to drop the gun to the moment Officer Taylor shot him in the chest.

## C. The Instant Motion

As explained above, the single question left unresolved by our prior order and thus the focus of the present motion for summary judgment is the reasonableness of Officer Taylor's belief that Eugene McKnight was wielding a gun on the front porch of the residence at the time he shot him.  Defendant maintains that circumstances surrounding the incident (as known to Officer Taylor) justified Officer Taylor's belief that McKnight was wielding a medium-sized black and silver handgun in a shooting position, less than thirty feet from the officers and public on scene, and therefore justified Officer Taylor's use of deadly force. Plaintiff rejoins that there remain material facts in dispute that foreclose summary judgment with regard to the objective reasonableness of Office Taylor's conduct and therefore the matter should be resolved by a jury.

**Legal Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when the record evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In deciding whether genuine disputes of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id*. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc*., 209 F.3d 687, 692 (7th Cir. 2000).

**Discussion**

Plaintiff alleges that in shooting and killing Eugene McKnight, Officer Taylor engaged in an "excessive and unreasonable use of deadly force," in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Compl. ¶ 27.

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. U.S. Const. Am. IV. This includes the right to be free from the unreasonable "seizure" of an individual by way of deadly

7

force. The reasonableness of any particular seizure is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and the appropriate level of force required to execute the seizure is to be judged in light of the specific facts and circumstances of that particular case. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)); *see also Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985) (noting that the question is "whether the totality of the circumstances justifie[s] a particular sort of seizure").

With regard to the use of deadly force, the Seventh Circuit has held that if a "suspect's actions place him, or others in the immediate vicinity, in imminent danger of death or serious bodily injury, deadly force can reasonably be used." *DeLuna v. City of Rockford, Ill.*, 447 F.3d 1008, 1010 (7th Cir. 2006); *see also Scott v. Edinburg,* 346 F.3d 752, 756 (7th Cir. 2003); *Muhammed v. City of Chi.,* 316 F.3d 680, 683 (7th Cir. 2002). It is well-established that "[t]hreaten[ing] a police officer with a deadly weapon" qualifies as an action placing the officer and his comrades in imminent danger of harm and justifying the use of deadly force. *Scott*, 346 F.3d at 756.

The parties before us dispute whether McKnight was, in fact, holding a gun when he emerged onto the front porch of 403 Read Street. It turns out that he was not. He had the handset of a home telephone in his hand. But Officer Knight, Officer Taylor, Officer Montgomery, and Sergeant Hoover all reported to seeing a silver and black object approximately five to six inches long in McKnight's left hand at the time of their confrontation, and all reported thinking that the object was a medium-sized handgun.

8

When the officers entered the residence following the shooting, they discovered McKnight's body lying near the entrance atop a silver and black phone matching the description of what the officers had believed to be a gun. The only gun located in the residence was found on the second story, near where McKnight had been shooting at the officers earlier during the incident. Defendant maintains that McKnight must have re-entered the home after being shot by Officer Taylor, traveled up the stairs to the second story where he dropped the gun, and then grabbed the silver and black telephone to make a call before falling on top of the phone and dying. Plaintiff, on the other hand, maintains that McKnight was holding the phone while on the porch and, after being shot by Officer Taylor, retreated into the home's first level where he collapsed and died. As Defendant recognizes, we must and do resolve this dispute in Plaintiff's favor as the non-moving party. However, our inquiry does not end here.

The Seventh Circuit has affirmed the grant of summary judgment to an officer who shot a suspect under the reasonable *belief* that the suspect had a gun. *See Henning v. O'Leary*, 477 F.3d 492 (7th Cir. 2007). Indeed, in *Henning* the Court found that two officers' reasonable belief that a suspect who was engaged in a struggle with them had gotten his hands on or near a gun gave them the requisite reasonable cause to use deadly force. *Id.* at 49. The Court stated further that "[p]olice officers cannot be expected to wait until a resisting arrestee has a firm grip on a deadly weapon…before taking action to ensure their safety." *Id.*  Thus, because our focus here is on the reasonableness of Officer

Taylor's *belief* that McKnight possessed a gun on the porch, the issues surrounding McKnight's actual possession of it are immaterial.

As fully explicated in our prior order denying summary judgment on Counts I and III, none of the circumstances of the standoff at 403 Read Street, apart from McKnight's putative possession of a gun, furnished grounds for the reasonable use of deadly force. We thus concluded that:

> Taylor's decision to shoot and kill McKnight was *only* within Fourth Amendment bounds if Taylor *reasonably believed* McKnight to have been armed—and thus an imminent threat to the responding officers. But McKnight was apparently unarmed, and we lack sufficient facts at this stage to determine whether Taylor's contrary belief was reasonable.

Dkt. 51 at 12 (emphasis added). [4]

Based on the additional discovery and the second round of briefing performed by the parties focusing on this issue, we find, based on the totality of the circumstances known to Officer Taylor at the time of the shooting, he had the requisite reasonable cause to justify his use of deadly force. [5]

---

[4] We explained also that because the law was clear on this issue—that a reasonable officer would know that shooting a man who wielded only a phone and presented no other threats would constitute excessive force, but that use of deadly force against a suspect wielding a gun was appropriate—the issue of qualified immunity also turned on the reasonableness of Officer Taylor's belief that McKnight was wielding a gun, rather than a phone. Dkt. 51 at 14.

[5] It is worth noting that despite our statement in our prior order that the absence of facts relevant to this determination created an "issue of fact" preventing summary judgment, that phrasing may have been misleading; the objective reasonableness of force used by an officer in conducting a seizure remains a legal determination for the Court to resolve. *Fitzgerald v. Santoro*, 707 F.3d 725, 733 (7th Cir. 2013).

The undisputed facts establish that, as a member of the Evansville Police Department's SWAT Unit, Officer Taylor was haled to the scene of an ongoing standoff between an armed suspect and the police at 403 Read St. Enroute to the scene, Officer Taylor learned from the police radio dispatches that the suspect had fired shots at officers positioned outside the residence. After his arrival, he was informed by another officer at the scene that one of the shots fired by the suspect had come close to hitting another officer's head and had struck a police cruiser. Within a few minutes, Officer Taylor had positioned himself directly behind two other officers in a place adjacent to the residence from which the gunman had fired shots at the police prior to Taylor's arrival. Immediately thereafter, as Office Taylor was unloading his less-than-lethal 40 mm launcher, he heard other officers on scene shout commands to the suspect to drop his gun and show his hands. Having heard those commands to the suspect, three or four times, to drop his gun, Officer Taylor believed McKnight to be armed, so he shouldered his .45 caliber rifle and took up a position from which he was able to view the suspect who had by this time emerged from the residence onto the front porch.[6] From this position, Officer Taylor has testified that he had a direct line of sight to McKnight, who was standing just thirty feet away in a shaded area under the awning of the front porch of the residence. He observed McKnight in a low, crouched position with his left forward and right foot back,

---

[6] The parties dispute whether Officer Taylor was standing behind Officer Knight (who was holding the ballistics shield) and peering over his left shoulder, or whether, as Defendant maintains, Officer Taylor was standing away from the huddle, completely exposed. We again resolve this dispute in favor of Plaintiff, but find that it is a minor matter that does not affect our final conclusion, which is based on the totality of the circumstances.

holding a silver and black object five-to-six inches long in his left hand, which was hanging by his left thigh. [7] Officer Taylor shouted his own command to McKnight to drop the gun and, when there was no immediate response to that command, Officer Taylor made the split-second decision to use deadly force. From these facts, based on the totality of the circumstances, we cannot conclude that Officer Taylor's decision was objectively unreasonable. *See Fitzgerald v. Santoro*, 707 F.3d 725, 733 (7th Cir. 2013).

We find particularly significant in reaching this conclusion the short distance between McKnight and Officer Taylor.[8] The close proximity between the two (less than thirty feet) placed Officer Taylor within firing distance of McKnight, which, in turn, accelerated the speed at which Taylor's decision needed to be made. It also provided Officer Taylor with a direct line of sight to McKnight, which revealed that McKnight was standing at the threshold of the door crouched down in a low stance with his left foot forward and right foot back, holding a five-to-six-inch-long silver and black object in his

---

[7] Plaintiff disputes Defendant's characterization that McKnight was holding the object "like one would hold a handgun." She maintains that because the object was a phone, it had neither a handle nor a trigger and therefore could not be held "like" a gun. Plaintiff also disputes Defendant's description of McKnight as standing in "an aggressive fighting stance" or "an aggressive bladed stance," and points to Sergeant Hoover's description of McKnight as "bent over" rather than "crouched." The Seventh Circuit held in *Henning* that disputes over the characterization of events by the officers on scene, without real evidence to contradict those characterizations, do not create genuine disputes of fact sufficient to surpass summary judgment. 477 F.3d at 496. Here, there is no dispute that Officer Taylor observed from a distance of less than thirty feet McKnight holding an object in his left hand while standing in a low, angled position; thus, Plaintiff's disputes regarding Officer Taylor's descriptions or perceptions of those events do not place the material facts of this case in genuine dispute.

[8] This fact, along with others, including a description of the size and shape of the object in McKnight's hand, the nature of Officer Taylor's line of sight, and the manner in which McKnight was holding the object, were submitted to the Court in the parties' second round of briefing on this issue and influence our determination of whether Officer Taylor was justified in believing the officers were in imminent danger of harm. *See Clash v. Beaty*, 77 F.3d 1045, 1047 (7th Cir. 1996).

12

left hand, which was the side closest to the officers. This too made time be of the essence;
Officer Taylor needed to decide very quickly whether to employ deadly force, for if the
object turned out to be gun, Taylor knew that only McKnight's lifting of his left hand
would allow him to begin firing at the officers. Given the split-second nature of the
required decision-making (reportedly less than ten seconds), it was not unreasonable for
Officer Taylor, who believed that the silver and black object located in McKnight's left
hand was a gun and who had heard other officers command McKnight to drop that gun
and had himself called out to him to do so, to react to the threat he perceived McKnight
to pose to himself and the other officers. The object in McKnight's hand as seen by
Officer Taylor was described by him as a medium-sized handgun, not unlike the gun later
discovered on the second story of the residence. This belief on the part of Officer Taylor
that McKnight was holding a gun significantly alters the analysis we conducted in our
prior order and warrants a decision that allows Officer Taylor the "considerable leeway"
to which he was entitled in assessing the appropriate amount and use of force in that
dangerous situation. *See Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009) (citing
*Graham v. Connor*, 490 U.S. 386, 397 (1989)).  Under these circumstances, it was not
objectively unreasonable for Officer Taylor to take the immediate precautions he took to
ensure the safety of himself, the other officers on scene, and the public nearby. *Henning*,
477 F.3d at 495. Accordingly, despite the sad conclusion to this confrontation, we find
that Officer Taylor's decision to fire his weapon at Eugene McKnight came within the
appropriate bounds of the Fourth Amendment.

Finally, we address an issue only alluded to, but never developed in Plaintiff's Response brief. Though neither listing it in her statement of material facts in dispute nor identifying it in her "statement of additional material facts," Plaintiff devotes two sentences of her argument (on page twenty-three of her Response) to an item of evidence relating to Officer Taylor's belief that McKnight possessed a gun. [9] See Dkt. 88 at 23. Plaintiff points to the following comment made by Officer Taylor, as recorded on his helmet camera, immediately after he shot Eugene McKnight: "He had a gun in his hand, right?" Pl.'s Ex. 8. Plaintiff urges the Court to infer from this statement that Officer Taylor "was not sure" that McKnight had a gun. Dkt. 88 at 23. Whatever the relevance of this statement, we do not judge Officer Taylor's conduct by whether or not he was "sure" that McKnight had a gun. Instead, we must determine whether Officer Taylor possessed an objectively reasonable belief that McKnight had a gun and thus presented an imminent danger to himself and others. Plaintiff's undeveloped argument that Officer Taylor was "not sure" of McKnight's gun possession lends itself to two possible interpretations here: (1) that Officer Taylor's belief was not objectively reasonable, or (2) that Officer Taylor did not in fact possess a subjective belief that McKnight had a gun. Under either interpretation, however, the result of our analysis remains the same.

We have ruled in light of the circumstances, that Officer Taylor's belief that McKnight possessed a gun was objectively reasonable. This evidentiary snippet from the helmet camera recording actually reinforces that conclusion, given that another officer is

---

[9] Defendant also has done little to aide in our analysis, dedicating only a single sentence to this argument in his Reply. See Dkt. 93 at 2.

14

heard immediately thereafter to confirm Officer Taylor's belief that McKnight had a gun. Pl.'s Ex. 8.

Whether Officer Taylor's recorded statement places his subjective belief into doubt is addressed and resolved by our prior Order: "It is, of course, near impossible to create a material issue of fact regarding a person's subjective beliefs." Dkt. 51 at 9 n.8. Plaintiff's passing reference to this evidentiary tidbit falls short in terms of derailing summary judgment. Her request that we infer that Officer Taylor did not actually believe McKnight possessed a gun is not a reasonable inference, and we are limited to drawing only *reasonable* inferences in her favor. *Anderson*, 477 U.S. at 255. At best, Officer Taylor's recorded remarks evidence his less-than-full conviction that McKnight was holding a gun, resulting in Taylor's requested reassurance from the other officers. This reasonable inference, however, does not undermine Officer Taylor's stated belief that McKnight possessed a gun—a fact that has been maintained consistently throughout this case. This evidence suggests with equal force that Officer Taylor sought after-the-fact affirmation of the reasonableness of his belief. Again, the circumstances surrounding Officer Taylor's encounter with Eugene McKnight provided him with a reasonable basis on which to believe that at the time he fired his weapon at McKnight, McKnight was himself in possession of a gun and presented an imminent threat to the officers and to the public. Accordingly, we <u>GRANT</u> Defendant's Motion for Summary Judgment on Count I.

**Conclusion**

For the reasons detailed above, Defendant Jacob Taylor's Motion for Summary Judgment on Counts I and II [Docket No. 76] is <u>GRANTED</u>.[10] Final Judgment shall enter accordingly.

IT IS SO ORDERED.

Date: 9/29/2016

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[10] We also <u>DISMISS</u> Count III of Plaintiff's Complaint, which pursuant to 42 U.S.C. § 1983, seeks to redress Plaintiff's injuries from "statutory civil violations." As Defendant correctly argues, Plaintiff has failed to identify the right(s) she seeks to vindicate, or the statute conferring such right(s). Plaintiff has also failed to respond to Defendant's request that this Count be dismissed or to address it at all in her Response and thereby is deemed to have abandoned any such claim. *Cent. States, Se. and Sw. Areas Pension Fund v. Midwest Motor Express*, 181 F.3d 799, 808 (7th Cir. 1991).

16

Distribution:

B. Michael Macer
BIESECKER DUTKANYCH & MACER LLC
mmacer@bdlegal.com

Andrew  Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC
ad@bdlegal.com

Kyle Frederick Biesecker
BIESECKER DUTKANYCH & MACER, LLC
kfb@bdlegal.com

Roy W. Harris, Jr.
HARRIS LEGAL PLLC (Troy)
roy@myharrislegal.com

Rhett David Gonterman
OLD NATIONAL BANCORP
rhett.gonterman@oldnational.com

Keith W. Vonderahe
ZIEMER STAYMAN WEITZEL & SHOULDERS
kvonderahe@zsws.com

Robert L. Burkart
ZIEMER STAYMAN WEITZEL & SHOULDERS
rburkart@zsws.com